[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought before to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Monique P. Scholefield, and the defendant, were married at Redding, Connecticut, on November 10, 1991. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage. No minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state or municipal assistance. The court finds the following additional facts.
The court finds that each party is partially at fault for the breakdown of the marriage.
The parties met in 1986. At that time, the defendant had completed the construction of a restaurant known as the Redding Roadhouse and owned by Macanudo, Inc. The Redding Roadhouse opened for business in October of 1986. The plaintiff was hired at that time as a bartender. The plaintiff and defendant commenced socializing in late 1987. At or about that time the plaintiff started to also work on weekends at the Redding Roadhouse. The parties started living together in 1987 at the defendant's sister's home in Wilton, Connecticut. The parties resided together at the defendant's sister's home for approximately one year. During the period of time the parties resided at the defendant's sister's home, they did not pay any rent. CT Page 5261-RRRRR
The plaintiff was hired as a manager at the Redding Roadhouse in 1988 or 1989 by the defendant. This was after the parties started living together.
The plaintiff's duties as manager of the Redding Roadhouse included reconciling the money from the previous day, scheduling employees' work hours, overseeing the food being properly prepared, and supervising parties. She was a manager for approximately six years until 1994. Her salary at the Redding Roadhouse started at $500 weekly in 1988. It was then increased in 1991 to $800 per week. In the spring of 1994, the plaintiff increased her salary to $1,000 per week. She was terminated in her position at the Redding Roadhouse in August, 1994, by the defendant, when the parties were discussing the filing of a divorce action.
The plaintiff claims that she was working eighty hours weekly in carrying out her duties as manager of the Redding Roadhouse. The court finds, from the evidence presented, that her duties did not require her to spend that much time at her job. There was no need for the plaintiff to be present at the Redding Roadhouse after the time the kitchen closed as there was a separate night manager available up to the closing time. There were occasions when the defendant would call the plaintiff at approximately 11 p.m. at the Redding Roadhouse asking that she return home. On some of those occasions, she refused to leave the Redding Roadhouse to return home.
The defendant and his sister, Jennifer Ahern, owned the Redding Roadhouse when the plaintiff was first employed at that business.
On some occasions, the plaintiff did not return home from the Redding Roadhouse until 4 a.m. to 5 a.m.
The plaintiff was unemployed from August, 1994 to August, 1955.
Commencing August, 1995, the plaintiff started looking for employment. She sent out approximately twelve resumes to hotels and restaurants. She was hired as a day manager for a short period of time, but lost that employment approximately March of 1996. She had been making $500 weekly at that position. She is now employed on a part-time basis cleaning homes. The plaintiff CT Page 5261-SSSSS is thirty-one years old. She hopes to be able to open her own restaurant and to relocate to South Carolina. She is looking to obtain a degree in restaurant management.
The restaurant management degree that the plaintiff desires to pursue at the University of South Carolina is a two year degree, with a tuition cost of approximately $10,000 per year. Upon graduation, the plaintiff will be able to earn between $30,000 to $35,000 annually with that degree. The plaintiff's need for alimony will not be as great upon her receiving her two year degree in restaurant management and obtaining employment in that field.
The plaintiff did not contribute any of her funds to any of the restaurants owned by the defendant. Although the defendant signed various guarantees regarding the various restaurants that he has a financial interest in, the plaintiff did not sign any of the guarantees in question.
The plaintiff is in good health. She does have some lower back problems, but they do not affect her ability to obtain employment.
The defendant graduated from high school in 1977.
The defendant was married prior to his marriage to the plaintiff and has two children from that prior marriage.
The defendant suffers a heart condition known as atrial fibulation as a result of having previously had a heart attack. He also has gout and fallen arches.
The defendant's financial affidavit, dated June 5, 1996, shows a monthly income from the Redding Roadhouse of $1734, and a monthly income from Mackenzie's of Fairfield consisting of an auto expense allowance of $733. He shows taxes on his Redding Roadhouse income on his financial affidavit of $135 monthly and a net monthly income of $2332. On February 22, 1996, Mackenzie's of Fairfield entered into an agreement with the I.R.S. The installment agreement entered into between Mackenzie's of Fairfield and the I.R.S. (marked as Defendant's Exhibit 3) shows that the amount of taxes owed to the I.R.S., as of February 22, 1996, is $37,675.92. In addition, that agreement calls for monthly payments in the amount of $2400, commencing March 15, 1996, and on the fifteenth day of each month thereafter. CT Page 5261-TTTTT
The lien to the I.R.S. on Mackenzie's of Fairfield should be paid off by approximately June of 1997.
The defendant had been drawing $700 weekly from that restaurant. He claimed that as a result of the agreement with the I.R.S., he no longer has a right to draw that weekly salary until the I.R.S. liability is liquidated. The court finds that that claim is not credible. The agreement with the I.R.S. (marked as Defendant's Exhibit 3) does not prohibit the defendant from continuing to draw a salary from Mackenzie's of Fairfield. The court is adding back into the defendant's income the $700 weekly that he claims he no longer has a right to draw from that restaurant.
The defendant's financial affidavit shows various monthly expenses. He is currently paying all of those monthly expenses, except for the mortgage on the family home and the real estate taxes on the family home.
The defendant's financial affidavit shows a liability to First Union Bank regarding Shenanigan's in the amount of $69,100. The defendant owns 12 1/2 percent of the real estate upon which Shenanigan's is located at 80 Washington Street. The total debt is $552,000. The defendant's 12 1/2 percent share of that debt is $69,100.
The defendant's financial affidavit shows a liability to Barclay's Bank in the amount of $175,000. This was a personal loan that was taken to build the restaurant in St. Thomas. The defendant and one other person guaranteed this loan.
There is an outstanding business loan (shown on the defendant's financial affidavit) guaranteed by the defendant to the Redding Roadhouse in the amount of $119,000 owed to the First Union Bank. In addition, there is an outstanding loan owed to the defendant's sister, Jennifer Ahern, to cover rent and payroll for the Redding Roadhouse that the defendant personally guaranteed with a balance of $26,500. The defendant's financial affidavit also shows a liability to Transmedia Mortgage Company of $72,000. He also has a debt to Midlantic Bank, with a balance of $15,000. That is for a car loan that the defendant cosigned for an employee. His financial affidavit shows a debt of $20,000 to Whaler Financial Mackenzie's Ale House. That is for a note that the defendant guaranteed. His financial affidavit shows various CT Page 5261-UUUUU credit cards with a total liability of $17,000. That is as a result of his having had the use of various credit cards of his sister and the amount of liability that he incurred using those credit cards. His financial affidavit shows medical bills of $8000. Those are medical bills incurred for the defendant. He also owes $9000 to his present attorney arising out of services rendered in the dissolution action. He also owes $6000 to David Sullivan which is the balance of a loan that he personally guaranteed. He also has a $40,000 loan from his sister that was used in the Mackenzie's of Fairfield restaurant. That loan was not personally guaranteed by him. He also owes his sister, Jennifer Ahern, $26,504 which is the balance owed to her for a short term loan from her to cover rent and payroll for the Redding Roadhouse. He also owes $64,000 to the I.R.S., arising out of the restaurant in St. Thomas, that was open in 1994. This $64,000 is for various unpaid taxes for the last three quarters in 1995. The $28,000 liability shown on his financial affidavit regarding Mackenzie's of Fairfield to the I.R.S. had a balance of $37,675.92 as of February 22, 1996, that was reduced to $28,000 as of June 5, 1996. He also owes the Commissioner of Revenue Services, arising out of Mackenzie's of Fairfield, $2300 of unpaid taxes.
The defendant's 1994 individual income tax return shows gross wages and salary of $177,730.
The defendant's 1995 income consisted of income from three sources:
1. Mackenzie's of Greenwich $22,800
2. Redding Roadhouse 28,000
3. Mackenzie's of Fairfield 36,400
TOTAL TAXABLE INCOME $87,200
In addition, the defendant was claiming that funds that he withdrew from Mackenzie's of Greenwich was a loan. In fact, it was income, and therefore has to be added to his income for 1995 up to the date of the sale of Mackenzie's of Greenwich in September of 1995.
The defendant acquired his financial interest in the property known as Shenanigan's Night Club in South Norwalk in 1987. CT Page 5261-VVVVV
The parties purchased the present family home located at 85 Sherman Turnpike, Redding, Connecticut, on August 28, 1989 as joint tenants. A contract has been entered into between the parties for the sale of the family home, dated June 19, 1996, for $415,000. The closing on the home is scheduled for on or before July 1, 1996. The parties were initially in dispute regarding the net amount that they will receive from the closing of the family home. The plaintiff initially had a net estimate from the proceeds of the closing of the family home, as shown on Plaintiff's Exhibit 3, of $49,795 under the following calculation:
TOTAL SALE PRICE: $415,000.
(LESS DISBURSEMENTS)
Real Estate Commission $ 18,675
Conveyance Taxes 2,530
Legal Fees 1,500
People's Bank — Arrearage 30,500
People's Bank — Principal balance 305,000
Septic System 5,000
Pool 1,000
Floor 1,000
TOTAL DISBURSEMENTS $365,205
ESTIMATED NET $ 49,795
The defendant had an estimate of net closing from the sale of the family home as shown on Schedule A of his Financial Affidavit, dated June 5, 1996, of $33,309.82, consisting of the following:
Bindered for sale $415,000.00
Mortgage, etc., payoff pursuant to CT Page 5261-WWWWW 3/11/96 action brought by People's Bank 334,387.18
Approximate additional arrearages, interest, etc., since 3/11/96 10,000.00
Broker's commission 20,075.00
Redding real estate taxes from list of 10/1/94 6,104.00
Conveyance taxes and counsel fees 5,000.00
Judgment lien — Internal Medicine Assoc. 1,124.00
Probable contractual allowance re septic and pool 5,000.00
APPROXIMATE EQUITY $ 33,309.82
During the course of the trial, the parties stipulated that the net amount that will be received from the closing would be $50,000. The court finds that the fair market value of the family home is $415,000. It has a mortgage balance of approximately $335,000, and there will be a net equity from the scheduled closing of $50,000.
The purchase of the family home was financed with a mortgage through the People's Bank, with the balance of $30,000 having been borrowed from the defendant's sister. The mortgage is presently in foreclosure.
The defendant vacated the family home in November or December of 1994. The plaintiff continues to reside there.
There is at present a problem with a septic system with a home that is under contract with an estimated cost of $5000 to repair that problem.
The defendant made the mortgage payments on the family home from August, 1994 to August, 1995. The plaintiff was unemployed during this period of time.
Both the plaintiff and the defendant contributed to repaying the $35,000 loan from the defendant's sister that was used as part of the down payment to purchase the family home. CT Page 5261-XXXXX
After the parties purchased the family home, additions were made to it in approximately 1992 or 1993 that cost approximately $100,000. The $100,000 was paid out over an approximate one and one-half to two year period. Most of the $100,000 came from the defendant's income. The additions to the family home were completed in the winter of 1994 or in January of 1995.
The plaintiff claims the defendant was drawing a total of $1400 weekly from the Redding Roadhouse.
The defendant had been drawing an annual income of $88,400 from the Old Greenwich Restaurant up to the time he sold his interest in September of 1995. The defendant had been taking two checks weekly from the Greenwich Restaurant, one in the amount of $600 and the second in the amount of $1100. He attempted to treat the $1100 check as a loan, but that was not allowed, and he therefore had to declare the full $1700 weekly as income.
The approximate $130,000 that the defendant received from the sale of his interest in this restaurant was used as follows:
A. Payment of rent owned by Redding Roadhouse $ 24,482.00
B. Payment to a food supplier 4,625.00
C. Payment to another food supplier 4,090.00
D. Payment of checks returned from a food supplier for insufficient funds 5,260.00
E. Payment of liability insurance approximately 4,500.00
F. Bank deposit to cover outstanding checks 10,000.00
G. Payment of St. Thomas restaurant payroll 1,500.00
H. Payment of legal fees 3,000.00
I. Payment of food supplier 5,200.00
J. Bank payment to First Fidelity 4,100.00
K. Payment to Sullivan on loan 20,000.00 CT Page 5261-YYYYY
L. Payment to D'loretta on loan 3,400.00
M. Payment 6,600.00
N. Payment to Redding Associates for rent 32,000.00
O. Payment for relocation expenses regarding St. Thomas restaurant 2,800.00
P. Payment to Weiss 900.00
Q. Payment to Cooper 480.00
R. Payment to I.R.S. regarding 1994 taxes 16,394.00
The defendant has various restaurant interests consisting of the following:
(a) 50 percent interest in Macanudo, Inc. (Redding Roadhouse) fair market value $180,000;
(b) 50 percent interest Mackenzie's Fairfield, fair market value $35,000;
(c) 12.5 percent interest Shenanigan's, no value;
(d) 22 percent interest Mackenzie's Redhook, no value;
(e) 33 percent interest Mackenzie's Ale House, fair market value $5000.
TOTAL RESTAURANT INTEREST VALUE: $220,000.
This court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81 (c) regarding the issues of property, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
A. BY WAY OF DISSOLUTION
The marriage between the parties is dissolved, and each party is declared to be single and unmarried. CT Page 5261-ZZZZZ
B. BY WAY OF ALIMONY
The defendant is ordered to pay to the plaintiff alimony in the sum of $350 per week. Alimony is to terminate on the earliest of the following events:
(1) the death of the plaintiff;
(2) the death of the defendant;
(3) the remarriage of the plaintiff;
(4) September 1, 1998.
Alimony is nonmodifiable as to term. The provisions of §§46b-86(a) and 46b-86(b) are applicable.
C. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to pay the liabilities shown on her financial affidavit, dated June 5, 1996, and hold the defendant harmless therefrom.
2. The defendant is to pay the liabilities shown on his financial affidavit, dated June 5, 1996, and hold the plaintiff harmless therefrom.
3. All of the equity remaining from the sale of the family home, after payment of the following debts, is to be retained by the plaintiff:
(a) first mortgage held by People's Bank, together with all arrearages, interest, bank attorney's fees, and penalties;
(b) real estate commission;
(c) conveyance taxes;
(d) legal fees for handling closing;
(e) payment of $5000 to repair septic system;
(f) payment of $1000 for pool repair; CT Page 5261-AAAAAA
(g) payment of $1000 for floor repair;
(h) payment of Redding real estate taxes;
(j) payment of judgment lien to Internal Medicine Associates.
In the event the net amount received after payment of the above is less than $50,000, then the difference is to be paid to the plaintiff by the defendant at the rate of $100 per week commencing thirty days after the date of this decision or thirty days after the closing, whichever event last occurs. In the event the property does not close for whatever reason and is ultimately foreclosed, then, in such event, the plaintiff is still to receive a net of $50,000 from the home, and any amount less than that received by her from the home is to be paid by the defendant at the rate of $100 per week commencing thirty days from the date the title transfers or thirty days from the date of this decision, whichever event last occurs.
4. All assets shown on the defendant's financial affidavit are awarded to the defendant.
5. The defendant is awarded the following items of personal property from the family home:
(a) set of blue onion china that the defendant's mother formerly owned;
(b) a cartoon given to the parties by the defendant's sister;
(c) a bronze statute;
(d) four bar stools;
(e) all of the remaining contents of the family home are awarded to the plaintiff.
D. BY WAY OF ATTORNEY'S FEES
No attorney's fees are awarded for either party.
E. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns, including the 1995 income tax returns, CT Page 5261-BBBBBB within thirty days after such returns have been filed by certified mail, return receipt, or registered mail, return receipt, for so long as there is an outstanding alimony order
2. The defendant is to provide to the plaintiff copies of the tax returns filed on behalf of Macanudo's, Mackenzie's of Fairfield, 80 Washington Street, Mackenzie's Redhook, and Mackenzie's Ale House within thirty days after such returns have been filed, including the 1995 returns, by certified mail, return receipt, or register mail, return receipt, for so long as there is an outstanding alimony order.
3. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
4. The plaintiff is restored her maiden name of Monique P. Scholefield.
Axelrod, J.